**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **DENNIS L. FORBES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **CAUSE NO. 1:20-cv-00479-SLC** |
| | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY**, *sued as Kilolo Kijakazi,* | ) |
| *Acting Commissioner of Social Security* | ) |
| *Administration,*[1] | ) |
| | ) |
| **Defendant.** | ) |

## <u>OPINION AND ORDER</u>

Plaintiff Dennis L. Forbes appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, none of Forbes's arguments are persuasive, and thus, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Forbes applied for DIB and SSI on July 9, 2018, alleging disability as of January 29, 2016. (ECF 17 Administrative Record ("AR") 15, 299, 337). His claim was denied initially and upon reconsideration. (AR 112-43, 146-75). After a timely request (AR 234-35), a hearing was held on April 21, 2020, before administrative law judge ("ALJ") William Pierson, at which Forbes, who was represented by counsel, and a vocational expert ("VE") testified. (AR 44-95).

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g.*, *Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

On May 6, 2020, the ALJ rendered an unfavorable decision to Forbes, concluding that he was not disabled because he could perform a significant number of jobs in the economy despite the limitations caused by his impairments. (AR 12-37). Forbes's request for review was denied by the Appeals Council (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. §§ 404.981, 416.1481.

Forbes filed a complaint with this Court on December 21, 2020, seeking relief from the Commissioner's decision. (ECF 1). In his appeal, Forbes alleges that the ALJ erred "by failing to incorporate the effects of . . . permanent lung impairment into [his] residual functional capacity (RFC), including failing in a logical bridge related thereto, and failing the interrelated credibility analysis—with disability due because claimant could not perform medium-level work." (ECF 27 at 15). Breaking that argument down into subparts, the Court discerns Forbes's arguments as: (1) the ALJ applied the wrong standard when determining whether Forbes engaged in substantial gainful activity ("SGA") after his alleged onset date, (2) the ALJ made inconsistent findings regarding the severity of Forbes's chronic obstructive pulmonary disorder ("COPD"); (3) the ALJ improperly discounted Dr. Vijay Kamineni's examining opinion; and (4) the ALJ's assessment of Forbes's symptom testimony and RFC formulation—specifically his determination that Forbes could perform medium rather than sedentary work—is not supported by substantial evidence. (*Id.* at 15-26).

At the time of the ALJ's decision, Forbes was fifty-nine years old, had received at least a high school education, and had relevant work experience as a boat assembler, driver, machinist, and forklift operator. (AR 35; *see also* AR 384). In his applications, Forbes alleged disability

2

due to depression, anxiety, suicidal thoughts, trouble breathing, deteriorating discs in back, high blood pressure, and acid reflux.  (AR 113, 129, 382).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed "only if [it is] not supported by substantial evidence or if the [ALJ] applied an erroneous legal standard."  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).  "Substantial evidence must be more than a scintilla but may be less than a preponderance."  *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citations omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner."  *Clifford*, 227 F.3d at 869 (citations omitted).  "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive."  *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted).  "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits."  *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

3

### III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant seeking DIB or SSI must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether he has a severe impairment, (3) whether his impairment is one that the Commissioner considers conclusively disabling, (4) whether he is incapable of performing his past relevant work; and (5) whether he is incapable of performing any work in the national economy.[2]  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. §§ 404.1520, 416.920.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.  *Id.*  The

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations.  20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. §§ 404.1520(e), 416.920(e).

4

burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The Commissioner's Final Decision

On May 6, 2020, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 12-42). At step one, the ALJ concluded that Forbes had engaged in SGA since January 29, 2016, his initial alleged onset date. (AR 17).[3] In particular, the ALJ noted that Forbes worked as a skid load driver from December 2016 through 2017, earning approximately $1,600 to $2,900 per month. (AR 17-18; *see* AR 359). Accordingly, the ALJ found that Forbes was not disabled through December 2017. (AR 18). At step two, the ALJ found that Forbes had the following severe impairments: substance induced mood disorder, opioid use disorder, alcohol use disorder, depression and anxiety disorders of varying diagnoses, cervical degenerative disc disease, and COPD. (*Id.*).

At step three, the ALJ concluded that Forbes did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 19). The ALJ then assigned Forbes the following RFC:

> [T]he claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the following: the claimant is limited to lifting, carrying, pushing and pulling twenty-five (25) pounds frequently and fifty (50) pounds occasionally. The claimant can sit at least six (6) hours in an eight- (8- ) hour work day and stand and/or walk six (6) hours in an eight- (8- ) hour work day. The claimant should not climb ropes, ladders, or scaffolds. The claimant can frequently kneel, crouch, and crawl and frequently bend and stoop, in addition to what is required to sit. The claimant can occasionally use ramps and stairs. The claimant can perform the balance required of such activities. The claimant is unable to perform complex or detailed tasks. The

---

[3] As discussed *infra*, Forbes suggests that he amended his alleged onset date at the hearing. (*See* AR 48-49).

claimant can perform simple, routine tasks, and instructions throughout the workday. The tasks contemplated are [Specific Vocational Preparation] 1 and 2 type tasks that can be learned within a short period through short demonstration, or when beyond short demonstration, within up to thirty (30) days. The tasks may be a[s] simple and as mundane as taking and packing the same item all day every day, or a task that is simple in nature but completed before moving to the next task, such as picking up one (1) item, inspecting it for a flaw-such as a bur and place it into places or boxes all day everyday or such as vacuuming, then emptying trash cans and then dusting, in one (1) office or room before moving to the next office or room. However, the type of tasks remain the same from day to day. The claimant can respond or adapt to the changes, cope with the stress and engage in the decision making required of such tasks. The claimant can engage in the superficial interaction with supervisors, coworkers, and the public in a manner consistent with SVP 1 and 2 type tasks in which prolonged or intense conversation is not required for task completion. With such limitations in place, the claimant can maintain the concentration, persistence, adaptation and even the pace required of such tasks for two (2) hour increments, and for eight- (8- ) hour work days within the confines of normal work place breaks and lunches-on a sustained day to day basis. The claimant is limited from concentrated exposure to excessive airborne particulate, dusts, fumes, and gases, excessive heat, humidity, and cold, such as when working outside or within a sawmill, boiler room, chemical plant, green house, refrigerator, industrial kitchen, or sewage plant.

(AR 28-29).

The ALJ found at step four that Forbes was unable to perform any of his past relevant work. (AR 35). At step five, the ALJ found that given his age, education, work experience, and RFC, Forbes could perform medium exertional level jobs that exist in significant numbers in the national economy including dining room attendant (57,000 jobs), conveyer attendant (40,000 jobs), and trimmer (315,000). (AR 36). As such, Forbes's applications for DIB and SSI were denied. (AR 37).

*C.  Analysis*

1.  Step One:  SGA

Forbes first faults the ALJ for citing to Social Security Ruling (SSR) 82-52, 1982 WL

31376 (1982), and *Barnhart v. Walton*, 535 U.S. 212 (2002), in support of his finding that Forbes

had engaged in SGA from December 2016 to December 2017.  (ECF 27 at 15-16; *see* AR 17-

18).  In that regard, the ALJ observed that:

> Social Security Ruling 82-52 establishes that when the return to
> work demonstrating the ability to engage in substantial gainful
> activity occurs before approval of the award and prior to the lapse
> of the twelve (12) month period after onset, the claimant must be
> denied.  Thus, pursuant to Social Security Ruling 82-52, 20 CFR
> 404.1592(d), and 20 CFR 404.1520(b), 20 CFR 404.920(b), and in
> light of Barnhart v. Walton, U.S., 122 S.Ct. 1265 (2002) the
> undersigned finds that the claimant was not disabled through
> December 2017.  In fact, based upon the above, the entire claim
> may be denied.

(AR 18).  Forbes accuses the ALJ of performing an "end-run around the evaluation process,"

apparently to establish that Forbes is not disabled so any subsequent errors in later steps would

be harmless.  (ECF 27 at 15-16).  Forbes also faults the ALJ for supposedly ignoring his

attorney's request at the hearing to focus on the period after the 2017 SGA and, presumably,

amend Forbes's alleged onset date to November 9, 2018.  (*Id.* at 16 (citing AR 48-49)).[4]

---

[4] It should be noted, however, that Forbes's attorney did not specifically request that the alleged onset date be
amended.  Rather, he suggested "narrowing the issues" because of the SGA through 2017, before suggesting that the
consultive examiner's November 9, 2018, medical source statement opining that Forbes was limited to less than
sedentary work provided "the most justifiable onset date."  (AR 48-49).  That being said, the ALJ appears to have
accepted that amended alleged onset date.  (AR 49 ("All right.  So, towards the end of '18, using that less than
sedentary onset, is what you're thinking now.")).  Because the Court ultimately finds any error by the ALJ to
recognize the amended alleged onset date is harmless, the Court need not dwell on whether Forbes properly
amended his alleged onset date.

7

The Commissioner, in response, "agrees that this SSR does not apply in this case" and contends that "[t]he portion of the *SSR 82-52* the ALJ cited pertains to claimants who have already established entitlement to benefits and then return to work within 12 months of their onset date of disability and prior to the award of benefits." (AR 30 at 5-6). Nevertheless, the Commissioner contends that any error at this step was harmless. (*Id.* at 6).

The Court agrees that SSR 82-52 does not stand for the proposition that the ALJ could have ended his analysis after determining that Forbes had engaged in SGA from December 2016 through December 2017. The purpose of SSR 82-52 was "[t]o state and explain the policy regarding the duration requirement under the disability provisions of titles II and XVI of the Social Security Act and implementing regulations." 1982 WL 31376, at *1. "'Duration of impairment' under title II and title XVI refers to that period of time during which an individual is continuously unable to engage in any SGA . . . because of a medically determinable physical or mental impairment(s)." *Id.* That is, in order "[t]o be found disabled, an individual must be unable to engage in any [SGA] by reason of a medically determinable physical or mental impairment(s) . . . which *has lasted or can be expected to last for a continuous period of at least 12 months*." *Id.* (emphasis added). Thus, a person may receive benefits on the expectation that an impairment will last twelve months, but if he "demonstrates ability to engage in SGA after an award of benefits but within the 12-month period after onset, benefits should be terminated . . . ." *Id.* at *2.

Here, however, Forbes had not been awarded benefits, and thus engaging in SGA is not necessarily fatal as the ALJ suggested. But the ALJ did not treat Forbes's SGA as fatal, as he continued through the entire five-step analysis—concluding that Forbes was not disabled from

January 29, 2016, through the date of the decision, May 6, 2020.  (AR 37).  Leaving aside for a moment Forbes's amended alleged onset date, the ALJ was required under the relevant regulations, to determine at step one whether Forbes had engaged in SGA.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i) ("At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled."), 416.920 (same).  Indeed, in order to have found Forbes eligible for benefits, he would have had to determine Forbes's established onset date ("EOD") or the earliest date Forbes met the statutory definition of disability and all applicable non-medical requirements during the period covered by his application.  *See* SSR 18-01p, 2018 WL 4945639, at *2 (Oct. 2, 2018).  "Generally, [the ALJ] may not determine a claimant's EOD to be before the last day that he or she performed SGA." *Id.* at *7.  Thus, there was nothing improper about the ALJ determining when Forbes last engaged in SGA.

Nor is there anything improper about the ALJ's conclusion that Forbes had actually engaged in SGA from December 2016 to December 2017.  "When considering whether a claimant's past work is substantial gainful activity, the primary consideration is the income derived from the activity."  *Pate v. Comm'r of Soc. Sec.*, No. 1:20-CV-01778-JRA, 2022 WL 625348, at *9 (N.D. Ohio Jan. 10, 2022), *R. & R. adopted by*, No. 1:20-CV-1778, 2022 WL 627066 (N.D. Ohio Mar. 3, 2022) (citing 20 C.F.R. § 404.1574(a)(1)); *see also* 20 C.F.R. § 416.974(a)(1).  "Earnings must exceed a minimum threshold to be considered substantial gainful activity, calculated on the basis of average monthly earnings."  *Pate*, 2022 WL 625348, at *9; *see also* 20 C.F.R. §§ 404.1574(b)(2)-(3), 416.974(b)(2)-(3).  For the years of 2016 and 2017 respectively, the monthly threshold earnings for non-blind claimants were $1,130 and $1,170.

9

*Pate*, 2022 WL 625348, at *9; *see also Social Security Administration, Substantial Gainful Activity*, http://www.ssa.gov/oact/cola/sga.html (last accessed July 27, 2022).  Forbes's earnings from December 2016 through December 2017 were above these thresholds, and at the hearing Forbes's attorney even admitted that they constituted SGA.  (AR 48).

This is not to say that the ALJ's analysis was error free.  Indeed, Forbes's attorney did attempt to amend his alleged onset date at the hearing as he is permitted to do.  (*Id.*; ECF 27 at 16); *see generally Adams v. Saul*, No. 2:19-CV-267-HAB, 2020 WL 2615751, at *1 (N.D. Ind. May 22, 2020) ("The plaintiff requested, and the ALJ accepted her request, to amend her alleged onset date . . . .").  But while the alleged onset date should be taken into account by an ALJ, it is not necessarily determinative when establishing an onset date.  *See* SSR 18-01P, 2018 WL 4945639, at *6 ("We consider whether we can find that the claimant first met the statutory definition of disability at the earliest date within the period under consideration, taking into account the date the claimant alleged that his or her disability began."); *see also Patricia H. v. Kijakazi*, No. 3:20-CV-50509, 2022 WL 2439946, at *3 (N.D. Ill. July 5, 2022) (upholding an ALJ's determination that the claimant was not entitled to benefits before January 20, 2017, despite alleging an onset date of May 11, 2013).

In any event, the ALJ specifically found that Forbes was not disabled from January 29, 2016, through May 6, 2020.  (AR 37).  Thus, even if the ALJ had acknowledged the amended alleged onset date of November 9, 2018, he would have still found Forbes to not be disabled during the relevant time period.  In fact, given that the ALJ found Forbes to not be disabled through the time of his decision, there was no need to find an established onset date.  *See Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004) ("The ALJ did not find that Scheck was disabled,

and therefore, there was no need to find an onset date.").  So long as that determination—that Forbes is not disabled—is supported by substantial evidence, any such error would be harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("But administrative error may be harmless:  we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.").

Finally, Forbes's assertion that the ALJ's misplaced reliance on SSR 82-52 constituted an "end-run" or somehow tainted the ALJ's ultimate conclusion is mere speculation.  (ECF 27 at 15-16).  The fact that the ALJ spent roughly fifteen pages considering Forbes's impairments and explaining the RFC determination (*see* AR 18-35), belies Forbes's assertion that the "ALJ insinuated that the subsequent medical and psychological analysis is immaterial" (ECF 27 at 16). Again, even if the ALJ did incorrectly suggest he could have ended his analysis at step one, the error is not fatal so long as he "conducted the requisite analysis."  *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).[5]  As mentioned, there is nothing to suggest that the ALJ did not perform the requisite analysis at step one, even though he considered period before Forbes's amended alleged onset date.  Accordingly, the Court will turn its attention to whether the ALJ applied the requisite analysis through the remainder of his decision.

2.  COPD Severity

Forbes next contends that the ALJ's analysis at steps two and three is contradictory. (ECF 27 at 16-17; *see* AR 18-19).  In particular, Forbes observes that at step two the ALJ found his COPD to be severe, but went on at step three to state that May 2018 treatment notes from the

---

[5] While the Seventh Circuit Court of Appeals observed that an ALJ "is required to apply the analysis outlined by Social Security Ruling 83-20 . . .  to determine the onset date of an applicant's disability," *Pugh*, 870 F.2d at 1274, SSR 18-01P superseded SSR 83-20 for applications pending on or after October 2, 2018, SSR 18-01P, 2018 WL 4945639, at *7.  Therefore, SSR 18-01P is applicable here.

Otis Bowen Center showing diminished breath sounds did "not indicate severe physical impairments much less listing level physical impairment."  (ECF 27 at 17 (citing AR 20-21)).  The ALJ, according to Forbes, should have clarified that "diminished breath sounds were not something asserted by [Forbes], but were instead something actually found on exam."  (ECF 27 at 17 (citing AR 2359-60, 2362)).  Further, Forbes goes on to emphasize that diminished breath sounds can in fact be helpful in determining the etiology of respiratory disease.  (ECF 27 at 17).

At first blush, the ALJ's reasoning seems somewhat confusing.  "There is no requirement of . . . tidy packaging, however; [the Court] read[s] the ALJ's decision as a whole and with common sense."  *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (citations omitted)).  Looking at the decision in its entirety, the ALJ did not inconsistently determine that Forbes's COPD was severe even though the evidence did not support a finding of severity.  Rather, the ALJ identified what evidence he found supported a severe impairment and what did not.  In that regard, after determining that Forbes's COPD was severe at step two, the ALJ proceeded to chronologically review the medical evidence at step three.  As to Forbes's pulmonary impairments, the ALJ first considered treatment notes from 2016 and 2017, during which time Forbes alleged his breathing improved with narcotic use and his pulmonary exams were normal.  (AR 19; *see, e.g.*, AR 513, 2198-99, 2204-05).  After summarizing these treatment notes, the ALJ wrote that they "reflect no listing level severity . . . ."  (AR 19).

The ALJ then considered treatment notes from a September 2017 emergency room visit, which also reflected normal findings.  (AR 20; *see* AR 2187).  Next, the ALJ reviewed emergency room treatment notes from April 2018, which showed normal chest x-rays.  (AR 20;

12

*see* AR 2179-80 ("Pulmonary vasculature is unremarkable.").[6]  The ALJ subsequently turned to the May 2018 treatment notes that Forbes now seizes upon, observing that:  "[Forbes] reported [COPD] and had diminished sounds but he also denied cough and shortness of breath in the review of symptoms and the upper lobes were clear, there was normal work of breathing and he had no evidence of wheezes, rales, and rhonchi."  (AR 20; *see* AR 2360-62).  After reviewing each of the treatment notes, the ALJ again observed that the notes did not reflect listing level physical impairments.  (AR 19-21).

The ALJ, however, went on to consider Forbes's pulmonary embolism in August 2018.  (AR 22 (citing AR 2353)).  When discussing the RFC later in his decision, the ALJ observed that the August 2018 computed tomography scan revealed multiple arteries with nodular infiltrates and opacities in his right lower lung.  (AR 30 (citing 2353, 2356)).  Nevertheless, the ALJ considered that at a follow-up visit, Forbes denied shortness of breath, and a pulmonary exam revealed good air movement with unlabored respirations and lungs clear to auscultation.  (AR 23; *see* AR 2355).  Further, the ALJ reviewed a November 2018 CT scan showing "multiple bilateral non-calcified nodules, resolution of other pleural based nodule, resolution of prior pleural effusion, emphysematous change and tracheal nodules."  (AR 23; *see* AR 2351).  Finally, the ALJ considered treatment notes from October 2019—after Forbes was hospitalized for complaints of shortness of breath—which showed Forbes's pulmonary effort to be normal, but breathing sounds to be coarse.  (AR 23; *see* AR 2105-06).  The ALJ also observed that Forbes

---

[6] That same x-ray report further stated:  "Lungs hyperexpanded.  Chronic interstitial lung markings noted bilaterally. No focal airspace consolidation identified.  No pneumothorax or significant pleural effusion."  (AR 2180).

was diagnosed with COPD.  (*Id*).  The ALJ concluded that these records reflect a severe pulmonary impairment, though not at a listing level.  (AR 23).

In sum, the ALJ summarized what evidence he thought supported a finding that Forbes's COPD was severe, and what evidence he thought did not.  While not clear from the limited portion of the decision zeroed in upon by Forbes, the ALJ did in fact build "an accurate and logical bridge from the evidence to [his] conclusion . . . ."  *Chase v. Astrue*, 458 F. App'x 553, 556-57 (7th Cir. 2012).

Forbes's further arguments regarding his breathing sounds are also unpersuasive.  While Forbes argues "lack or diminution of breath sounds is not a spare finding indicative of the lack of respiratory findings" (ECF 27 at 17), there is little to suggest the ALJ considered Forbes's diminished breathing sounds to suggest a lack of respiratory findings.  Rather the ALJ observed that the evidence in the treatment notes that might suggest that Forbes met or equaled a listing (i.e. "reported COPD" and "diminished sounds"), before contrasting it with evidence that did not (i.e. denial of cough, shortness of breath, clear upper lobes, normal work of breathing, and lack of evidence of wheezes, rales, and rhonci), before concluding that those particular treatment notes did not in fact support a finding that Forbes met a listing at step three.  (AR 21).  Also, the ALJ simply articulated that Forbes "had" diminished breathing sounds.  (AR 20; *see* AR 2362 ("Lungs:  Diminished in the bases.")).  The ALJ's characterization of these treatment notes appears consistent with the notes themselves and does not suggest—as Forbes asserts—that the ALJ considered Forbes's diminished breathing sounds to be self-reported.

In any event, the ALJ found Forbes's COPD to be severe at step two, and even if he did not, it would be a harmless error so long as "the ALJ properly considered all of [Forbes's] severe

14

and non-severe impairments, the objective medical evidence, [his] symptoms, and [his] credibility when determining [his] RFC . . .."  *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015).  Accordingly, the Court will move on from Forbes's step-two argument to consider his remaining arguments, including whether his COPD was adequately accounted for in the RFC.

### 3.  Dr. Kamineni's Opinion

Before turning to the RFC itself, the Court will separately address Forbes's criticism of the weight afforded to consultative examiner Dr. Kamineni's medical source statement.  (ECF 27 at 17-19 (citing AR 1685-86)).  Forbes attacks the ALJ's conclusion that Dr. Kamineni's opinion as to Forbes's ability to lift and carry was unpersuasive.  (*Id.* at 17 (citing AR 25)).  Further, Forbes accuses the ALJ of ignoring his report of chest pain cited in Dr. Kamineni's report and emphasizes that Dr. Kamineni diagnosed him with panlobular emphysema.  (*Id.* at 18-19).

By way of background, Forbes attended his consultive exam with Dr. Kamineni on November 9, 2018, reporting a "dull and ache" chest pain.  (AR 1682).  Forbes was able to perform acts of daily living, including dressing, tying shoes, buttoning and unbuttoning, and picking up a coin.  (*Id.*).  A chest and lung exam was clear, and revealed no crackles, no wheezes, no rhonchi, and good air exchange.  (AR 1685).  A chest inspection showed normal chest wall expansion.  (*Id.*).  A musculoskeletal exam revealed 5/5 muscle strength bilaterally in both the upper and lower extremities, normal range of motion, and a negative straight leg test. (*Id.*).  Under "Encounter Diagnoses," Dr. Kamineni listed essential hypertension, panlobular emphysema, gastroesophageal reflux disease (esophagitis presence not specified), anxiety, dysthymia, and lumbar degenerative disc disease.  (AR 1686).  As a medical source statement, Dr. Kamineni reported that:

> [Forbes] states that he can sit for 100 minutes and stand for 30
> minutes.  [Forbes] states he can walk for 0 blocks.  [Forbes] has
> normal fine motor skills with normal handling of objects.  Normal
> concentration and social interaction.  Remote and recent memory
> intact.  Normal hearing, speech and vision.  [Forbes] cannot carry
> twenty pounds short/long distances.  [Forbes] can lift ten pounds
> over [his] head one time.

(AR 1685).

At step three, the ALJ observed that Dr. Kamineni's report revealed clear lungs, no

crackles, no wheezes, no rhonchi, good air exchange, and normal chest expansion.  (AR 25; *see*

AR 1685).  The ALJ found Dr. Kamineni's medical source statement—concluding that Forbes

could sit for one-hundred minutes, stand for thirty minutes, walk zero blocks, and cannot carry

twenty pounds—unpersuasive, explaining that it appeared be based on Forbes's own subjective

complaints and inconsistent with "the remainder of the treatment notes through type of treatment

sought and received, diagnostic testing, clinical findings, imaging, reports regarding gait, station,

pain levels, and even what is acknowledged or denied in the review of systems, etc."  (AR 25).

Similarly, when explaining the RFC formulation, the ALJ observed that despite Forbes

exhibiting full range of motion and muscle strength, normal grip strength, and intact bilateral

hand fine finger motion, Dr. Kamineni opined that Forbes is unable to walk one block and could

not carry twenty pounds or lift ten pounds over his head more than once.  (AR 31; *see* AR 1682-

86).  The ALJ considered these results to be internally inconsistent and not supported by in-

office examination notes in the record consistently showing normal physical abilities—including

one showing excellent muscle strength and ranges of motion.  (AR 31 (citing AR 2101, 2106,

2210, 2216, 2242, 2248, 2454, 2459, 2263, 2479, 2281,  2489)).  Further, the ALJ once again

noted that Dr. Kamineni appeared to rely upon Forbes's own subjective description of his

limitations and observed that Forbes has not sought or required additional treatments.  (AR 31;
*see* AR 85 ("And the doctor said, he cannot carry 20 pounds short/long distances . . . and he can
lift 10 pounds over the head one time.  Is that something you might have told him? . . . That
sounds about right, yes.")).

In addition, as mentioned *supra*, the ALJ considered various medical records showing
relatively normal pulmonary findings.  The ALJ observed that while the August 2018 CT scan
showed blood clots in multiple arteries with nodular infiltrates in Forbes's lower right lung,
Forbes had refused to use his inhalers and his spirometry examination improved significantly
with the use of bronchodilators.  (AR 30).  Further, the ALJ noted that Forbes did not exhibit
breathing problems at a follow-up in September 2018.  (*Id.* (citing 2086-88)).  The ALJ also
considered Forbes's hearing testimony that he has not maintained or required ongoing care for
his pulmonary impairments, and his only regular treatment was using his inhaler three times
daily.  (*Id.*; *see* AR 69-71).  The ALJ similarly noted that Forbes "testified that he continued to
smoke, further suggesting his condition was not as limiting as described."  (*Id.*; *see also* AR 26
("[Forbes] has not looked into any program or medication for stopping smoking through his
pulmonologist or treating physician outside of reducing his smoking.  He is not taking
medication now for pulmonary embolism.").

In assessing medical opinion evidence, an ALJ "will not defer or give any specific
evidentiary weight, including controlling weight, to any medical opinion(s) or prior
administrative medical finding(s), including those from [the claimant's] medical sources."  20
C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather, the ALJ is to consider the following factors when
determining the proper weight to apply to the opinion or prior administrative finding:  (1)

17

supportability; (2) consistency; (3) the relationship with the claimant, including the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) specialization; and (5) other factors brought to the attention of the Commissioner.  20 C.F.R. §§ 404.1520c(a), 416.920c(c); *see Etherington v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *3 (N.D. Ind. Jan. 21, 2021), *R. & R. adopted by Bart E. v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 411440 (N.D. Ind. Feb. 5, 2021).  "Although the ALJ must consider all of these factors, he need only explain how he considered supportability and consistency."  *Kaehr v. Saul*, No. 3:19-CV-1171-PPS, 2021 WL 321450, at *3 (N.D. Ind. Feb. 1, 2021) ("[T]he factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." (ellipses in original) (quoting 20 C.F.R. §§ 404.1529c(b)(2), 416.920c(a))).  Further, "[a]n ALJ must only 'minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.'"  *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (quoting *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)) (discussing the weight afforded to medical opinions).

As an initial matter, it does not necessarily follow that normal muscle strength and range of motion is inconsistent with Dr. Kamineni's opinion regarding Forbes's limited ability to lift and carry.  After all, Forbes's limited ability to lift or carry may be caused by his pulmonary impairments rather than any deficit in strength or range of motion.  *See generally Janeway v. Sec'y of Health & Hum. Servs.*, 702 F. Supp. 795, 800-01 (C.D. Cal. 1988) (finding the ALJ's conclusion that the claimant could engage in sedentary work despite not being able to "lift more

than five pounds without experiencing respiratory difficulty" to not be supported by substantial evidence).  The ALJ, however, did not rely solely on Forbes's strength and range of motion.

As observed earlier, the ALJ noted that Dr. Kamineni's opinion was "not supported by the remainder of the treatment notes through type of treatment sought and received, diagnostic testing, clinical findings, imaging, reports regarding gait, station, pain levels, and even what is acknowledged or denied in the review of systems, etc."  (AR 25).  The ALJ was permitted to consider the supportability of Dr. Kamineni's opinion, and Dr. Kamineni "did not provide objective exams or diagnostic testing to support the limitations he believed were necessary." *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022).

Rather, Dr. Kamineni appeared to base his opinion on what Forbes had told him.  It is well established that an ALJ is permitted to discount a medical opinion to the extent it was based on a claimant's own subjective statements.  *See Ziegler v. Astrue*, 576 F. Supp. 2d 982, 998 (W.D. Wis. 2008) ("It is well settled that an administrative law judge may disregard a medical opinion premised on the claimant's self-reported symptoms if the administrative law judge has reason to doubt the claimant's credibility." (collecting cases)), *aff'd*, 336 F App'x 563 (7th Cir. 2009); s*ee also Rice*, 384 F.3d at 371 ("[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints."); *Diaz v. Chate*r, 55 F.3d 300, 308 (7th Cir. 1995) ("The portion of Dr. Cascino's report concerning Mr. Diaz's limited ability to sit, stand or walk appears to be based upon Mr. Diaz's own statements about his functional restrictions at the time of the examination. The ALJ could consider this portion of the report less significant than the doctor's other findings, and we shall not reweigh the evidence on appeal." (citation omitted)).

Further, as discussed, the ALJ considered various instances in the medical record where Forbes showed relatively normal pulmonary findings and conservative treatment—including his lack of further pulmonary treatment.  While in general, "an ALJ must not draw inferences about a claimant's lack of treatment without exploring the reasons for the inaction," *Ray v. Berryhill*, 915 F.3d 486, 490-91 (7th Cir. 2019), "the ALJ was not required to conclude that [Forbes required greater restrictions] because there was a lack of medical evidence." *Dross-Swart v. Astrue*, 872 F. Supp. 2d 780, 794 (N.D. Ind. 2012); *see also Gotz v. Barnhart*, 207 F. Supp. 2d 886, 900 (E.D. Wis. 2002) ("The ALJ did not base her finding on plaintiff's lack of psychiatric treatment.  Rather, she noted that the absence of treatment was one reason for attaching significant weight to the reports of Drs. Spear and Kaplan.  This was not error.").

It is true that the ALJ did not specifically cite to Dr. Kamineni's diagnosis of panlobular emphysema or his complaint of dull chest pain.  "But an ALJ need not mention every piece of evidence, so long [as] he builds a logical bridge from the evidence to his conclusion." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).  Still more, Dr. Kamineni's diagnosis does not, by itself, establish the need for greater limitations than those ultimately included in the RFC.  "The social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment." *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005).  "[P]ointing to various diagnoses and complaints and saying that they might hinder [Forbes] is insufficient to establish the existence of a functional limitation." *Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018).  Accordingly, the ALJ was not required to afford Dr. Kamineni's opinion greater weight as to its lifting restriction because of its recorded diagnoses.

Given the foregoing, the ALJ "minimally articulated" his reasoning about Dr. Kamineni's opinion, *Berger*, 516 F.3d at 545, focusing primarily on the supportability and consistency of the report with the record as a whole, *see* 20 C.F.R. §§ 404.1529c(b)(2), 416.920c(a).  As a result, remand is not required on these grounds.

## 4.  Symptom Testimony and RFC

Finally, Forbes takes issue with the ALJ's determination in the RFC that he could perform medium exertional level work.  (ECF 27 at 20).  Forbes argues that he should have been limited to sedentary work, which he contends—when considered in conjunction with his age, education, and skill level—would make him automatically disabled pursuant to the so-called "grid" regulations.  (*Id.*); *see* 20 C.F.R. Part 404, Subpart P, App'x 2, § 202.06.  In support, Forbes points to his hearing testimony that he struggles to carry bundles of wood for his woodburning stove from his garage to his house without stopping to catch his breath (ECF 27 at 21 (citing AR 86)), contending that it reflects that he cannot frequently lift or carry objects weighing up to twenty-five pounds as required of medium level work, *see* 20 C.F.R. §§ 404.1567(c), 416.967(c).

Forbes further alleges that his symptom testimony is consistent with Dr. Kamineni's medical source statement.  (ECF 27 at 22).  Forbes faults the ALJ for supposedly discounting his hearing testimony due to his use of cigarettes throughout the period that he was allegedly disabled.  (*Id.*).  Finally, in quick succession and with little development, Forbes argues that the ALJ failed to adequately consider his good work history, that his pulmonary symptoms continued despite improvement from acute situations, and that a severed palmaris longus tendon from a July 2018 suicide attempt would implicitly support Dr. Kamineni's lifting restriction and

could limit his grip and pinch strength. (*Id.* at 23-24). Ultimately, none of Forbes's arguments concerning the ALJ's credibility determination or RFC formulation are convincing.

As to Forbes's symptom testimony, generally the Court will "overturn an ALJ's adverse credibility determination only if it is unsupported by substantial evidence or rests on legally improper analysis." *Lambert v. Berryhill*, 896 F.3d 768, 777 (7th Cir. 2018) (citing *Ghiselli v. Colvin*, 837 F.3d 771, 778-79 (7th Cir. 2016)). Said another way, an ALJ's credibility determination will not be overturned unless it is "patently wrong." *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018). That being said, an ALJ's opinion as to credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Norris v. Astrue*, 776 F. Supp. 2d 616, 632 (N.D. Ill. 2011) (citing SSR 96-7P, 1996 WL 374186, at *2 (July 2, 1996)); *see also* SSR 16-3P, 2017 WL 5180304, at *10 (superseding SSR 96-7P) ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (second emphasis omitted). That is, the "RFC is not the *least* an individual can do despite his or her limitations or

restrictions, but the *most*."  *Id.* at *1; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  Therefore, when determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

However, "in assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments."  SSR 96-8P, 1996 WL 374184, at *2.  "[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient."  *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (citations omitted) (finding that the ALJ "satisfied the [RFC] discussion requirements by analyzing the objective medical evidence, [the claimant's] testimony (and credibility), and other evidence").  "The ALJ need not provide a written evaluation of every piece of evidence, but need only 'minimally articulate' his reasoning so as to connect the evidence to his conclusions."  *Id.* at 657-58 (citing *Rice*, 384 F.3d at 371); *see also Catchings v. Astrue*, 769 F. Supp. 2d 1137, 1146 (N.D. Ill. 2011).

Here, when assigning the RFC and limiting Forbes to medium work, the ALJ first asserted Forbes's allegations concerning the intensity, persistence, and limiting effects of his

impairments were not consistent with the medical and other evidence in the record.  (AR 29).  As already discussed *supra*, the ALJ chronologically summarized the medical record at step three. Further, when assigning the RFC, the ALJ reviewed the medical records from and following Forbes's pulmonary embolism, including his improvement with bronchodilators and his lack of breathing problems at a follow-up in September 2018.  (AR 30 (citing AR 2086)).  Again, the ALJ also considered Forbes's hearing testimony regarding his relatively conservative treatment and use of his inhalers.  (*Id.*; *see* AR 69-71).  The ALJ similarly noted that Forbes "testified that he continued to smoke, further suggesting his condition was not as limiting as described."  (AR 30).

Regarding the opinion evidence in the record, as already discussed, the ALJ discounted the medical source statement of Dr. Kamineni.  The ALJ, however, also considered the opinions of the state agency physicians who found that Forbes was able to perform medium work at both the initial and reconsideration levels.  (AR 31 (citing AR 120-21, 169-70)).  The ALJ viewed the state agency physicians' opinions as more consistent with the treatment record and that Forbes had not sought or required additional pulmonary treatments.  (*Id.*).  Accordingly, the ALJ found the state agency physicians' opinions "to be persuasive."  (*Id.*).

Ultimately, the ALJ adequately explained his reasoning, building "an accurate and logical bridge from evidence to [his] conclusion . . . ," *Chase*, 458 F. App'x at 556-57, and his analysis is not "patently wrong," *Hall*, 906 F.3d at 644.  As was the case with Dr. Kamineni's opinion, the ALJ primarily contrasted Forbes's testimony about his physical limitations with the lack of objective evidence or treatment notes supporting those limitations.  But "under SSR 16-3p . . . , the ALJ must 'evaluate whether the [claimant's] statements are consistent with the objective

medical evidence and the other evidence.'"  *Blackwell v. Berryhill*, No. 2:17-CV-00460-JVB-APR, 2019 WL 1397476, at \*5 (N.D. Ind. Mar. 27, 2019).  In the same vein, as already discussed, the ALJ was permitted to discount Dr. Kamineni's opinion to the extent it was based on Forbes's own subjective statements.

It is true that the ALJ's reliance on Forbes's failure to quit smoking is subject to criticism.  *See Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) ("One does not need to look far to see persons with emphysema or lung cancer—directly caused by smoking—who continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the product impacts their ability to stop.  This is an unreliable basis on which to rest a credibility determination.").  But the ALJ considered Forbes's continued smoking in conjunction with relatively conservative treatment of his respiratory ailments and his failure to seek additional treatment despite being advised to do so by his physician.  (*See* AR 26 ("As for his lungs and breathing complaints, he is not seeing a pulmonologist. . . .  [H]e has not looked into any program or medication for stopping smoking through his pulmonologist or treating physician outside of reducing his smoking.  He is not taking medication now for pulmonary embolism.")).  "Failures to seek medical treatment in the face of claimed illness, can be a factor in evaluating credibility."  *Orienti v. Astrue*, 958 F. Supp. 2d 961, 977 (N.D. Ill. 2013); *see also Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (affirming adverse credibility finding based on "relatively conservative" treatment); *Mcclure v. Colvin*, No. 1:12-cv-571-TAB-RLY, 2013 WL 4509848, at \*5 (S.D. Ind. Aug. 23, 2013) ("McClure's lack of surgery is relevant where it correlates to his otherwise conservative treatment . . . ."); *Stanley v. Astrue*, No. 1:11-cv-00298, 2012 WL 1158630, at \*10 (N.D. Ind. Apr. 6, 2012) (affirming relevance of the ALJ's

25

consideration of the claimant's relatively conservative treatment).  In any event, "the ALJ didn't solely rely on [Forbes's] smoking in concluding that the evidence didn't substantiate the severity of [his impairments]—a logical bridge still exists between the ALJ's cited evidence and [his] conclusion." *Martinez v. Kijakazi*, No. 1:20-CV-285-RLM, 2022 WL 1462825, at *6 (N.D. Ind. Mar. 14, 2022), *appeal docketed*, No. 22-1820 (7th Cir. May 9, 2022).  Accordingly, any error in this respect is harmless.

To the extent Forbes cites other evidence of record in his favor, he does not necessarily show that the ALJ's reasoning is flawed.  While the ALJ did not specifically discuss Forbes's good work history, an "ALJ's silence [about the claimant's good work record] is not enough to negate the substantial evidence supporting the adverse credibility finding." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016); *see Best v. Berryhill*, 730 F. App'x 380, 383 (7th Cir. 2018) ("[N]one of [the cases cited by the claimant] establish that an ALJ commits reversible error by not mentioning a claimant's work history in the written opinion."); *see also Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017).  Though Forbes emphasizes that his pulmonary impairments continued despite improvement, the ALJ obviously agreed that they continued— otherwise he would have not attempted to accommodate them in the RFC.  (*See* AR 28-29).  But again, it is Forbes's burden to show greater restrictions are necessary.  Besides Dr. Kamineni's medical source statement which the ALJ was permitted to discount, Forbes points to no other medical source opining a need for greater restrictions.  *See Rice*, 384 F.3d at 370-71.

Still more, to the extent that Forbes argues his severed palmaris longus tendon "implicitly" supports Dr. Kamineni's opinion that he could not lift ten pounds over his head (ECF 27 at 23-24), Dr. Kamineni did not offer any such reasoning (*see* AR 1682-68).  Further,

Forbes argues that the injury to his palmaris longus tendon is relevant because it would affect his grip and pinch strength.  (ECF 27 at 24).  But Dr. Kamineni himself noted that Forbes had "5/5 grip strength with bilateral hands with the ability to perform fine and gross movements on a sustain[ed] basis with the ability to button, zip and pick up coins."  (AR 1685).  As such, Forbes's argument seems inconsistent with Dr. Kamineni's own assessment, and he points to no other source opining the need for greater restrictions stemming from his wrist injury.

The ALJ, on the other hand, properly considered that the state agency physicians also reviewed the medical record and concluded that Forbes could perform medium work with less restrictions than those offered by the ALJ.  (AR 121-22, 154-55).  "The regulations, and this Circuit, clearly recognize that reviewing physicians . . . are experts in their field and the ALJ is entitled to rely on their expertise."  *Ottman v. Barnhart*, 306 F. Supp. 2d. 829, 839 (N.D. Ind. 2004).  The ALJ was permitted to credit their opinions over that of Dr. Kamineni.  *See Scheck*, 357 F.3d at 700 (noting that ALJs are entitled to rely upon the opinions of state agency doctors); *see also Young*, 362 F.3d at 1001 ("The ALJ evaluated the evidence submitted by the many medical experts in this case and where that evidence was conflicting, he resolved those conflicts by giving more weight to some evidence and less to others.").

In sum, despite "colorable arguments [in Forbes's favor], [the Court] will not reweigh the evidence."  *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021).  The ALJ explained the reasons why he discounted Forbes's testimony and Dr. Kamineni's report, focusing primarily on the consistency with the record.  Further, the ALJ adequately explained his reasoning behind the RFC formulation, and Forbes has not shown the greater restrictions are necessary.  Accordingly, no remand is required.

## IV.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.  The Clerk is directed to enter a judgment in favor of the Commissioner and against Forbes.

SO ORDERED.

Entered this 9th day of August 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge